IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT ANCHORAGE

CYNTHIA GREINER HOLMES,
                    Plaintiff(s),

vs.

SMITH & NEPHEW AHP, INC; JOHN DOES I-X;
                    Defendant(s).

CASE NO. 3AN- 13- 9005

Smith & Nephew, Inc.
Legal Department - Litigation Group
SEP - 3 2013

SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT

To Defendant: **SMITH & NEPHEW AHP, INC.**

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) **Phillip Paul Weidner & Associates**, whose address is: **330 L Street, Suite 200, Anchorage, AK 99501**.

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at www.courts.alaska.gov/forms.htm, to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

### NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

[X] This case has been assigned to Superior Court Judge **McKAY** and Master _____.

[ ] This case has been assigned to District Court Judge _____.

CLERK OF COURT

**8-25-13**
Date

By: _____ Deputy Clerk

I certify that on **8-23-13** a copy of this Summons was [ ] mailed [X] given to [ ] plaintiff [X] plaintiff's counsel along with a copy of the [ ] Domestic Relations Procedural Order [ ] Civil Pre-Trial Order to serve on the defendant with the summons.
Deputy Clerk _____

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 ANCH (6/10)(st.3)
SUMMONS
Civil Rules 4, 5, 12, 42(c), 55

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

CYNTHIA GREINER HOLMES, )
)
    Plaintiff, )
)
v. )
)
SMITH & NEPHEW AHP, INC.; JOHN )
DOES I-X, )
)
    Defendants. )  Case No. 3AN-13-9005 CI
)

**COPY**
Original Received
AUG 2 3 2013
Clerk of the Trial Courts

## COMPLAINT

COMES NOW Plaintiff, Cynthia Greiner Holmes, by and through counsel, Phillip Paul Weidner of Phillip Paul Weidner & Associates, APC, and hereby state, plead, allege, claim, and complain as her causes of action in the instant matter as follows:

### PARTIES

1. Plaintiff CYNTHIA GREINER HOLMES was and is a resident of the State of Alaska at all times pertinent hereto. She underwent left hip replacement surgery on December 3, 2009 at Alaska Regional Hospital by Dr. Douglas Prevost, utilizing Smith & Nephew Ahp, Inc.'s metal on metal components identified in the following procedure: Right total hip arthroscopy with the following implants: Smith & Nephew total hip system size #5; Anthology standard offset femoral stem; 38-mm modular femoral head with +4 neck length; 50-mm outer diameter, 3-holed hemispherical stick tight-coated shell; 38-mm cobalt chrome acetabular liner; and a 6.5-mm cancellous bone screw x1m, central hole cover x1.

2. Cynthia Greiner Holmes received Smith & Nephew components in her surgery. (See Operative Report as Exhibit 1).

3. Defendant SMITH & NEPHEW AHP, INC. (hereinafter Smith & Nephew) is a corporation whose registered Office Address in the United States is 1450 Brooks Road, Memphis, TN 38116 and whose Registered Agent is CT Corporation System. Smith & Nephew is and was doing business in Alaska, the United States and throughout the world at all times relevant hereto, in a manner reasonably calculated to have an impact on the State of Alaska, and an impact on the Plaintiff herein in a foreseeable manner, which resulted in the Plaintiff's injuries such as to subject it to jurisdiction in the Courts of the State of Alaska. Smith & Nephew designed and/or manufactured and/or distributed and/or sold the Smith & Nephew Surgical Components at issue to Alaska Regional Hospital.

4. Defendants JOHN DOES 1-10 are entities and/or individuals presently unknown to Plaintiff, who were either related to Smith & Nephew and/or involved in the design, manufacture, selling, advertising, warranting, and/or distributing of the subject Smith & Nephew Surgical Components and/or involved in the research, and/or testing, marketing of said products and/or similar products or component parts thereto, or responsible for same.

5. It is the intent and purpose of the filing and service of this Complaint to make claims against and file suit against and give notice to all culpable entities or individuals and to preserve Plaintiff's right to obtain relief from same, and named Smith & Nephew is requested to notify all culpable defendants and parties. In the event further investigation and discovery reveal that the precise Smith & Nephew's Surgical Components implanted in Cynthia Greiner Holmes are different then that set out herein, then it is the intention of this complaint to bring suit against the named Smith &

COMPLAINT
*Holmes v. Smith & Nephew Ahp, Inc.* Page 2 of 10

Nephew as well as any other culpable Defendants based upon similar theories of liability. This includes but is not limited to culpability and liability as to actual use of the precise Smith & Nephew's Surgical Components as well as involvement industry wide and activities relating to the design, manufacture, marketing, advertising, warranty and sale and/or use of said products.

## FACTS COMMON TO ALL COUNTS

6. Plaintiff Cynthia Greiner Holmes underwent right hip arthroplasty surgery on December 3, 2009 at Alaska Regional Hospital by Dr. Douglas Prevost, utilizing Smith & Nephew's Surgical Components identified in the following procedure: Right total hip arthroscopy with the following implants: Smith & Nephew total hip system size #5; Anthology standard offset femoral stem; 38-mm modular femoral head with +4 neck length; 50-mm outer diameter, 3-holed hemispherical stick tight-coated shell; 38-mm cobalt chrome acetabular liner; and a 6.5-mm cancellous bone screw x1m, central hole cover x1.

7. Cynthia Greiner Holmes experienced pain, suffering, disability and ultimately required removal of the Smith & Nephew's Surgical Components in another surgery that occurred in December 2012. She has suffered wear on her Smith & Nephew's prosthesis due to metal on metal wear and tear resulting in the wearing out of the hip replacement years prematurely, causing a additional surgery and causing elevated levels of cobalt and chromium in her blood with attendant health care risks, pain and suffering, disability and need for additional surgeries.

8. At the time of the sale and/or use of the subject Smith & Nephew Surgical Components and/or the injuries to the Plaintiff, Smith & Nephew was engaged in the business of

designing and/or manufacturing and/or selling and/or distributing and/or marketing said alleged Smith & Nephew Surgical Components and other similar products. Smith & Nephew had an obligation and responsibility to design and manufacture and sell and introduce into the stream or commerce, Smith & Nephew Surgical Components free of defects. These products continued to be manufactured, marketed, sold, and Smith & Nephew refused to recall, or warn, even after it became known that said products could fail and cause severe injury to the recipients including knowledge of similar products failing and/or being recalled before the surgery on CYNTHIA GREINER HOLMES, leading to severe chronic pain, the need for additional surgical procedures, ultimately permanent impairment, and metal poisoning and was defectively designed and/or manufactured and/or marketed without adequate warning and without adequate testing or studies.

9. As set out herein, the subject Smith & Nephew Surgical Components, were defectively designed and/or manufactured and/or advertised and/or warranted and sold without adequate warnings to health care providers, without providing adequate information on the failure rate, on the hazard, on other failures of the Smith & Nephew Surgical Components to function as advertised, and furthermore, insofar as the product failures and problems were known and/or concealed and/or imputably known by Smith & Nephew and said Defendant's culpable acts or omissions as to said products, including the Smith & Nephew Surgical Components which caused injuries to Plaintiff CYNTHIA GREINER HOLMES, such that said Smith & Nephew Defendant is strictly liable for same, and/or negligent and subject to all appropriate compensatory and punitive damages. The subject Smith & Nephew Surgical Components used in the

**COMPLAINT**
*Holmes v. Smith & Nephew Ahp, Inc.*　　　　　　　　　　　　　　　　　　Page 4 of 10

surgery of December 3, 2009 on CYNTHIA GREINER HOLMES are identified in Exhibits 1 and 2 (Operative Report of December 3, 2009 and Alaska Regional Hospital Progress Note of April 3, 2012).

10. On information and belief, neither the Smith & Nephew Defendant(s) nor their representatives informed Alaska Regional Hospital and/or Dr. Douglas Prevost of the failure rate, and/or of adverse events in the product and/or similar products, minimized the risk, failed to provide appropriate warnings and other information, and advertised the product as the best available such product on the market at the time.

11. The Smith & Nephew Surgical Components were either defectively designed and/or the particular Smith & Nephew Surgical Components were defectively manufactured for use in hip replacement surgery.

12. The Smith & Nephew Surgical Components, on information and belief, are not otherwise subject to federal preemption under the law.

### FIRST CAUSE OF ACTION
### STRICT LIABILITY

13. Plaintiff realleges, replead, recomplain and restate as her causes of action herein Paragraphs 1 through 12 above as though fully set out.

14. Smith & Nephew Defendants (Smith and Nephew and John Does 1-10) are strictly liable for the manner in which the Smith & Nephew Surgical Components were designed, manufactured, advertised, warranted and/or distributed, which did not perform as a reasonable consumer/user would expect, including Dr. Prevost, the surgeon, and CYNTHIA GREINER HOLMES, the patient.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

15. Plaintiff realleges, replead, recomplain and restate as her causes of action herein Paragraphs 1 through 14 above as though fully set out.

16. Smith & Nephew Defendants are negligent in the manner in which they designed, manufactured, advertised and/or warranted and/or warned the consumer/users of the Smith & Nephew Surgical Components and/or similar products and the failure to adequately inform consumers/users of the failure rate, adverse events and/or adverse consequences and/or defective nature of the Smith & Nephew Surgical Components. Furthermore, the damages continued until the health care providers learned in April 2012 that the cause of CYNTHIA GREINER HOLMES' problems was defective Smith & Nephew Surgical Components, which knowledge if revealed sooner could have resulted in her health care providers not using the defective Smith & Nephew Surgical Components at the initial surgery, or if revealed after surgery but still sooner than when revealed removal of the defective Smith & Nephew parts earlier than was done.

## THIRD CAUSE OF ACTION
## IMPLIED WARRANTY

17. Plaintiff realleges, replead, recomplain and restate as her causes of action herein Paragraphs 1 through 16 above as though fully set out.

18. Smith & Nephew Defendants are liable for breach of one or more implied warranties under the law as the defective Smith & Nephew Surgical Components did not perform as the medical providers and CYNTHIA GREINER HOLMES would have expected as reasonable consumers.

## FOURTH CAUSE OF ACTION
## EXPRESS WARRANTY

19. Plaintiff realleges, replead, recomplain and restate as their causes of action herein Paragraphs 1 through 18 above as though fully set out.

20. Smith & Nephew Defendants are liable due to breach of express warranties, including misrepresenting to Dr. Prevost the quality/safety of the Smith & Nephew Surgical Components for hip replacement surgery.

## FIFTH CAUSE OF ACTION
## FAILURE TO WARN

21. Plaintiff realleges, replead, recomplain and restates as their causes of action herein Paragraphs 1 through 20 above as though fully set out.

22. Smith & Nephew Defendants are liable due to failure to warn and/or alert consumers of the failure rate of Smith & Nephew Surgical Components used on CYNTHIA GREINER HOLMES and/or their defective nature. Her health care providers did not learn until Spring of 2012 that the cause of CYNTHIA GREINER HOLMES' problems was defective Smith & Nephew Surgical Components, which knowledge, if revealed sooner could have resulted in her health care providers not using the Smith & Nephew Surgical Components at the initial surgery or if revealed after the surgery but sooner than the recall was actually made could have resulted in her health care providers providing appropriate care sooner.

## SIXTH CAUSE OF ACTION
## CONCEALMENT

23. Plaintiff realleges, replead, recomplain and restate as their causes of action herein Paragraphs 1 through 22 above as though fully set out.

**COMPLAINT**
*Holmes v. Smith & Nephew Ahp, Inc.* Page 7 of 10

24. Smith & Nephew Defendants on information and belief, and to maximize profits, has concealed and/or failed to disclose incident reports, adverse events, failures, and failure rates for Smith & Nephew Surgical Components, to the purchasers/consumers/users of its products, particularly surgeons such as Dr. Prevost, who Smith & Nephew Defendants seek out to use their products. This includes knowledge in the industry of problems with other metal on metal hip replacement components of other manufacturers. Smith & Nephew Defendants are liable for intentional and/or reckless and/or negligent concealment resulting in the use of a product that would not have been used. Furthermore, the damage continues and if revealed sooner could have resulted in providing her appropriate care years ago.

## SEVENTH CAUSE OF ACTION
## CONSUMER PROTECTION

25. Plaintiffs reallege, replead, recomplain and restate as their causes of action herein Paragraphs 1 through 24 above as though fully set out.

26. Smith & Nephew Defendants are liable due to violations of applicable Federal and State consumer laws.

## EIGTH CAUSE OF ACTION
## FAILURE TO RECALL

27. Plaintiff realleges, replead, recomplain and restate as their causes of action herein Paragraphs 1 through 26 above as though fully set out.

28. Smith & Nephew Defendants failed to recall their products prior to the use of said products that caused Plaintiff CYNTHIA GREINER HOLMES's injuries despite knowledge of the inadequacy of said products and the risk of severe damage and other

**COMPLAINT**
*Holmes v. Smith & Nephew Ahp, Inc.*   Page 8 of 10

potential complications of use of product and are liable under strict product liability and negligence in the failure to recall.

## PUNITIVE DAMAGES

29. The reckless and willful and grossly reckless and wanton actions of the Smith & Nephew Defendants, with reckless and willful disregard for the consequences, warrant punitive damages as to the conduct of each and all of said Smith & Nephew Defendants, which was willful, wanton, reckless, and grossly reckless and in deliberate and willful disregard of the foreseeable consequences; such that punitive damages in an appropriate amount should be awarded, given due regard for the net worth and insurance coverage of the Smith & Nephew Defendants, and the reckless, willful, grossly negligent, culpable, and wanton conduct of the Smith & Nephew Defendants to chill and deter and punish such conduct and failure to act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Imposition of compensatory damages jointly and/or severally against defendants in the maximum amount allowed under the law, in an amount in excess of $100,000;

2. Punitive damages against the defendant in an amount in excess of $100,000;

3. For appropriate prejudgment and post judgment interest in the maximum amount allowable by law;

4. For costs and attorney's fees in the maximum amount allowable under the law;

5. For each and other relief the Court deems just and equitable.

RESPECTFULLY submitted this 22nd day of August, 2013, at Anchorage, Alaska.

WEIDNER & ASSOCIATES  
Counsel for Plaintiff

By: *Michael Wolfe for*  
Phillip Paul Weidner  
ABA No. 7305032

**COMPLAINT**
*Holmes v. Smith & Nephew Ahp, Inc.*                                    Page 10 of 10

ALASKA REGIONAL HOSPITAL

NAME: HOLMES, CYNTHIA GREINER
MR#: L000438371
Douglas P. Prevost, M.D.

RM#: L.625 02
DOB: 03/06/1957
SSN: 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

OPERATIVE REPORT

DATE: 12/03/2009

SURGEON: Douglas P. Prevost, M.D.

ASSISTANT: John C. Godersky, MD.

ANESTHESIOLOGIST: Kevin Alexander Kozicz, MD.

PREOPERATIVE DIAGNOSES:
1. Right hip dysplasia.
2. Osteoarthritis of the right hip.

POSTOPERATIVE DIAGNOSES:
1. Right hip dysplasia.
2. Osteoarthritis of the right hip.

PROCEDURE: Right total hip arthroplasty.

IMPLANTS:
1. Smith and Nephew total hip system size #5.
2. Anthology standard offset femoral stem.
3. A 38-mm modular femoral head with +4 neck length.
4. A 50-mm outer diameter, 3-holed hemispherical stick tight-coated shell.
5. A 38-mm cobalt chrome acetabular liner.
6. A 6.5-mm cancellous bone screw x1, central hole cover x1.

ESTIMATED BLOOD LOSS: 250 cc.

DRAINS: Hemovac drains x1.

INDICATIONS: The patient is a 52-year-old female with a longstanding history of right hip dysplasia and progressive osteoarthritis. She has undergone extensive nonsurgical treatment and has failed to have adequate pain relief. Due to persistent pain and poor function, she has been indicated for total hip replacement.

Specifically, we have discussed the risks for infection, nerve or vascular injury, DVT/PE, loss of motion, incomplete pain relief, the potential need for future revision surgery, and the medical risk of procedure. She seems to understand these issues and wishes to proceed.

Copy For: Douglas P. Prevost, M.D.

Page 1

EXHIBIT 1
1/3

We have also discussed issues related to leg length inequality, intraoperative fracture, and dislocation.

DESCRIPTION OF OPERATION: After obtaining preop consent, the patient was taken to the operating room and a spinal anesthetic was administered without complications. The patient received 2 g of IV Ancef preoperatively. The patient was then placed into the left lateral decubitus position with the aid of a pegboard and axillary roll. The right hip region was then prepped and draped in usual sterile fashion utilizing water impervious drapes. A standard posterior approach to the hip was then conducted. The incision was taken down sharply to the iliotibial band. The gluteus maximus muscle was split proximally and the dissection was taken down to the short external rotators. The piriformis tendon was identified and tagging sutures were placed in the piriformis and obturator internus tendons. The remainder of the short external rotators were taken down and the capsule exposed. Capsulotomy was conducted and the hip joint exposed.

A 764 Steinmann pin was then placed into the superior acetabular region. This pin was bent down towards the greater trochanteric region to serve as a reference for leg lengths. The length of the leg was measured both prior to dislocation and following hip replacement and the length of the leg following the hip replacement appeared to have lengthened almost 1 mm.

The hip was then dislocated and a femoral neck cut 1 cm proximal to the level of the lesser trochanter. Appropriate retractors were placed and the acetabulum exposed. The remaining labrum and pulvinar were excised. The acetabulum was then deepened down to the quadrilateral plate of bone and then progressively widened. I initially started a 42-mm reamer and then progressively widened out to a 50-mm reamer. At 15 mm, I had excellent endosteal bleeding bone. During the reaming process, I tried to create approximately 25 degrees of anteversion and 45 degrees of lateral opening to the cup. I then impacted a size 50 outer diameter stick tight R-3 cup into 25 degrees of anteversion. One 6.5-mm cancellus bone screw was placed to augment fixation. A single cap screw was placed. The 38-mm cobalt chrome liner was then placed into the acetabulum and secured utilizing a Morse taper.

Attention was then turned towards the proximal femur. A box osteotome was used to gain entry into the canal and an awl was used to sound the canal. I began broaching with a size #1 broach and ultimately progressed up to a size #5. At size #5, I had excellent axial and rotational control. I then trialed with a +5 anthology standard offset stem and a +4 neck length and a 38-mm head. I felt I had recreated the leg lengths and the hip had excellent stability throughout a full provocative range of motion. No tendency of dislocate except with traction, marked internal rotation, and flexion.

The trial components were removed and the actual size #5 anthology standard offset stem was then impacted into 15 to 20 degrees of anteversion. I utilized a +4 neck length on the 38-mm head and reduced the hip.

The hip was then extensively irrigated with a total of 3 L of pulse lavage solution, which contained bacitracin. The hip was injected with platelet rich plasma to help assist with wound healing. The capsule and short external rotators were reapproximated down to the greater

Copy For: Douglas P. Prevost, M.D.                                                    Page 2

ALASKA REGIONAL HOSPITAL

NAME: HOLMES, CYNTHIA GREINER
MR#: L000438371
OPERATIVE REPORT

trochanter utilizing #5 Ethibond suture. A single one-eighth inch Hemovac drain was placed distally and anteriorly. The IT band was closed utilizing running locked #2 Vicryl sutures, subcutaneous tissue was closed utilizing buried #1 Vicryl sutures and buried 2-0 Vicryl sutures, and the skin was then closed utilizing running 4-0 Monocryl stitch. Mastisol and Steri-Strips were applied. A bulky sterile dressing was then placed. The patient then had a standard hip abduction pillow placed as well. The patient tolerated the procedure well and had no intraoperative complications. Of note, prior to starting the procedure, SCDs were placed on the left lower extremity and at the completion of the procedure, SCDs were placed on the right lower extremity.

Douglas P. Prevost, M.D.
MEDQ/JOB# 411242
D: 12/03/2009 09:36:26
T: 12/03/2009 20:54:18

April 3, 2012                                         Holmes, Cynthia G #182482
CHIEF COMPLAINT: Ms. Holmes returns today for a followup evaluation of her right hip.

INTERVAL HISTORY: She underwent right total hip replacement on December 3, 2009. She says she did very well for the first year and a half, but has developed progressively worsening symptoms in her right hip. She is complaining of an aching sensation about her right hip and points to the groin as the source of her pain. She also has some buttock discomfort that extends down into the thigh. She says she feels like that area is on fire now for the last couple of months. She says the pain gets to be as bad as an eight out of ten. She says sometimes, the pain is as good as a zero out of ten. She says routinely, the pain is at least a two or three out of ten. She states that she is not sleeping well at night due to the pain. She has undergone a Smith & Nephew large femoral head metal-on-metal articulation total hip replacement. We did measure the cobalt levels at last visit, and they came back at 5.2 mcg/L. The patient returns today to discuss treatment options. She denies any memory loss. She denies any depression. She denies any hearing loss or tinnitus as well. There are no systemic symptoms at all reported. Her only symptoms are those related to her right hip.

PHYSICAL EXAMINATION: Physical examination shows pain on range of motion testing. There is pain at the extremes of forward flexion and also pain at the extremes of wide abduction. She has a nonantalgic-type gait. Her calves are soft and nontender. She is neurologically and vascularly intact. Straight leg examination is negative for radicular signs.

ASSESSMENT:
1. Painful right hip status post right total hip arthroplasty utilizing a metal-on-metal articulation.
2. Elevated serum cobalt levels without systemic signs of cobalt toxicity.

PLAN:
1. I have discussed with the patient extensively her clinical history, her physical examination, and her treatment to this point. I have reviewed with her the above diagnoses.
2. Given the worsening nature of the patient's local pain in her hip, I think it is reasonable to consider revision total hip replacement. She does have a modular metal-on-metal total hip replacement from Smith & Nephew. Her acetabular and femoral components appear to be well-fixed and appropriately placed. I have discussed with the patient that the bearing surfaces can be exchanged to a ceramic-polyethylene or metal-polyethylene without having to remove the acetabular component or the femoral component. I have discussed this issue with the patient extensively.
3. She is quite disappointed that the hip has to be revised so soon, and she is hopeful for significantly longer longevity. I have discussed this issue with the patient extensively, and ultimately, we have decided to proceed with revision, given her significant local symptoms. I have discussed with the patient the concerns for systemic toxicity, and I have recommended to her that revision be undertaken sometime within the next six months, or sooner if she desires. The patient would like to proceed as soon as possible, and she will be scheduled for revision right total hip replacement.
4. I have thoroughly discussed with the patient this procedure, and I have described it to her in detail. I have discussed with her the potential risks and potential benefits as well. I have answered the patient's questions fully.

*D. Prevost, M.D.*

Dictated by: Douglas Prevost, MD/RI358
D: 04/05/2012
T: 04/07/2012